**FIRST DIVISION**
June 7, 2010

No. 1-08-3411

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 6555 |
| | ) | |
| JIMMIE MENDOZA, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The defendant Jimmie Mendoza appeals from the second-stage dismissal of his amended petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 et seq. (West 2008)). The defendant contends that a remand is in order because postconviction counsel rendered "unreasonable, substandard, level of assistance in attempting to shape petitioner's pro se claims into an Amended Petition" and the circuit court erred in dismissing his amended petition, which alleged ineffective assistance of trial counsel, among other claims.

We reject the defendant's first contention that postconviction counsel violated Supreme Court 651(c) because he makes no showing that postconviction counsel contravened any of the specific duties imposed by the rule. 134 Ill. 2d R. 651(c).

No. 1-08-3411

We affirm the circuit court's determination that the defendant's claim of ineffective assistance of trial counsel is subject to dismissal.

BACKGROUND

Following a jury trial, the defendant was convicted of attempt (murder) and aggravated battery with a firearm in the September 2000 shooting of Ruben Castruita. At trial, the defendant was represented by private counsel, Robert Callahan. During posttrial proceedings, the trial judge vacated the aggravated battery conviction and sentenced the defendant to 25 years in prison on attempt, to be followed by an enhanced sentence of 25 years for inflicting great bodily harm with a firearm pursuant to section 8-4(c)(1)(D) of the Criminal Code of 1961 (720 ILCS 5/8-4(c)(1)(D) (West 2002)).

The evidence at trial established that following an altercation between Castruita and the defendant's girlfriend in the early evening on September 17, 2000, the defendant drove to Castruita's house around 10 p.m. While exiting the vehicle, the defendant fired a handgun at Castruita, striking him in the leg. As the defendant approached Castruita, according to witnesses he shouted, "Don't f--k with [my] family." Castruita threw a beer bottle at the defendant. The defendant fired three more shots, striking Castruita in the leg and torso.

2

No. 1-08-3411

Castruita lost consciousness and awoke in Mount Sinai Hospital, where he remained for two months. He lost a kidney, his spleen, and a portion of his pancreas and was unable to walk for approximately six months. In February 2001, Castruita viewed a lineup at the police station and identified the defendant as the shooter.

At trial, five eyewitnesses identified the defendant as the shooter. The witnesses detailed the events of the evening. The defense stipulated to the testimony of Dr. Zarat, Castruita's treating physician at Mount Sinai Hospital, concerning the extent of Castruita's injuries.

The defense presented only one witness, the defendant's mother. She testified that on the evening of the altercation Castruita was "very intoxicated," staggering and yelling loudly. She claimed she could smell the drug PCP on his breath.

It was uncontested before the jury that the defendant fired the shots that struck Castruita. The question for the jury was whether the defendant shot Castruita with the specific intent to kill. Defense counsel argued to the jury that the defendant only shot at Castruita's legs. He argued: the defendant did not aim at Castruita's torso when he fired the shot that caused the extensive internal injuries, the shot to the torso was not intentional, and the defendant did not have the specific intent

3

No. 1-08-3411

to kill Castruita. The jury convicted the defendant of attempted murder and aggravated battery. The defendant dismissed trial counsel and retained attorney Thomas Moore for posttrial proceedings.

On direct appeal, the defendant, represented by Moore and Travis Richardson, raised numerous issues, only one of which we found meritorious. The defendant asserted that his enhanced sentence was improper because the enabling section had been declared unconstitutional by the Illinois Supreme Court in People v. Morgan, 203 Ill. 2d 470, 492, 786 N.E.2d 994 (2003) (overruled two years later by People v. Sharpe, 216 Ill. 2d 481, 839 N.E.2d 492 (2005)). The State agreed. We affirmed the defendant's conviction and modified the sentence accordingly. People v. Mendoza, No. 1-03-0704 (2004) (unpublished order under Supreme Court Rule 23). The supreme court denied the defendant leave to appeal. People v. Mendoza, 212 Ill. 2d 546, 824 N.E.2d 289 (2004).

On May 25, 2005, the defendant filed a pro se petition for postconviction relief. On October 17, 2007, the defendant's retained counsel, Angela Lockett, filed an amended postconviction petition. The amended petition alleged four claims: (1) the defendant was denied his counsel of choice when, on the day his case was set for trial, he informed the court he was unhappy with

4

No. 1-08-3411

Callahan and wished to be represented by different counsel; (2) he was denied his right to be present when the jury returned two questions during deliberations; (3) actual innocence; and (4) ineffective assistance of both trial and appellate counsel. The amended petition alleged trial counsel rendered ineffective assistance in a variety of ways. The allegations included trial counsel's failure to introduce evidence of the "inner workings of gang rules," which required retaliation only for the death of a fellow gang member and therefore supported the defendant's lack of intent to kill; counsel's failure to produce evidence that the defendant was angry and under the influence of drugs and alcohol at the time he shot Castruita; counsel's failure to tender a reckless conduct instruction; counsel's failure to call the defendant's sister to testify that Castruita had offered to drop the charges in exchange for money; and counsel's decision to stipulate to medical testimony instead of calling a medical expert that would have supported the defendant's claim that he did not aim at any vital organ when Castruita was shot in the torso.

On October 29, 2008, Judge Joseph Claps, in a written order, granted the State's motion to dismiss, rejecting each constitutional claim asserted in the amended petition. Judge Claps specifically held the defendant failed to show either

5

deficient performance by trial counsel or that the defendant suffered actual prejudice by the alleged omissions of counsel. Judge Claps found the defendant's other claims to be entirely conclusory, holding such claims, by their very nature, do not establish a substantial violation of constitutional rights.

The State Appellate Defender's Office was appointed to represent the defendant on appeal. The defendant, through appellate counsel, now contends postconviction counsel provided an unreasonable and substandard level of assistance. He points to counsel's failure to attach affidavits in support of the petition and have verified the affidavits of the defendant and his sister accompanying the petition. The defendant contends "post-conviction counsel watered down the factual argument that was the key argument supporting the claim of ineffective assistance of trial counsel. Post-conviction counsel rendered unreasonable assistance in violation of Rule 651(c)." The defendant asserts this cause should be remanded for further postconviction proceedings in the circuit court, with the appointment of new counsel, if necessary. Notwithstanding his contention that postconviction counsel's assistance was unreasonable, in his second issue the defendant claims the amended petition presented sufficient allegations of trial counsel's ineffectiveness to make a substantial showing under the

6

No. 1-08-3411

Act to entitle him to proceed further in postconviction proceedings.

ANALYSIS

We begin with the observation that the defendant's first issue fails to expressly claim that postconviction counsel violated any of the specific duties mandated by Supreme Court Rule 651(c). Instead, the defendant attacks postconviction counsel for failing to attach signed affidavits of the defendant or his sister, failing to attach an affidavit of the treating physician, and failing to provide evidentiary support for the defendant's pro se claim that Castruita's internal injuries were caused by one of the shots he fired "because the victim 'fell-into-the bullet,' " all of which he contends amount to unreasonable assistance under Rule 651(c).

In response to this general challenge by the defendant to the reasonableness of the assistance provided by postconviction counsel, the State asserts "that a petitioner's claim of unreasonable assistance of post-conviction counsel is not cognizable as a free-standing claim in post-conviction proceedings." As authority the State quotes from People v. Rossi, 387 Ill. App. 3d 1054, 1059, 902 N.E.2d 158 (2009), "When considering an appeal from the dismissal of a petitioner's

7

No. 1-08-3411

postconviction petition, the appellate court is limited to considering matters that are of constitutional dimension." The defendant makes no reply to the State's point of law. While we find Rossi does not dictate the outcome here, it does provide guidance in assessing whether a proper claim under Rule 651(c) has been made before us.

In Rossi, the postconviction proceedings before the circuit court followed the dismissal of his direct appeal for lack of jurisdiction. Rossi, 387 Ill. App. 3d at 1055. The circuit court allowed the defendant the opportunity to challenge his pleas of guilty and appointed counsel to assist the defendant in his motion to withdraw his guilty pleas. Rossi, 387 Ill. App. 3d at 1055. The circuit court determined that the defendant's pleas of guilty were voluntary and the Third District affirmed. Rossi, 387 Ill. App. 3d at 1055, citing People v. Rossi, No. 3-99-0629 (2001) (unpublished order pursuant to Supreme Court Rule 23) (166 Ill. 2d R. 23).

In October 2001, the defendant filed a successive pro se postconviction petition, in which he once again challenged the effectiveness of trial counsel, but added that appointed counsel on his motion to vacate provided deficient representation. Rossi, 387 Ill. App. 3d at 1056. The circuit court appointed new counsel to represent the defendant in the successive

8

No. 1-08-3411

postconviction petition, but after hearing testimony from counsel appointed to assist the defendant on his motion to vacate, dismissed the successive petition. Rossi, 387 Ill. App. 3d at 1056.

Within 30 days of the dismissal order, the defendant "filed several pro se motions, including a petition for rehearing which included a prayer that petitioner be allowed to amend the petition for rehearing and alleged among other things that [appointed counsel's] representation was unreasonable for failing to amend his successive postconviction petition to adequately raise the issues of ineffective assistance of [counsel on his motion to vacate,] trial counsel, and appellate counsel." Rossi, 387 Ill. App. 3d at 1056. The circuit court appointed other counsel to represent the defendant on his petition for rehearing. In its order, the court directed, " '[Appointed counsel] shall examine the record and file a certificate pursuant to Rule 651.' " Rossi, 387 Ill. App. 3d at 1056. Following argument, the circuit court denied the defendant's motion. Rossi, 387 Ill. App. 3d at 1056-57.

Writing for the court, Justice McDade noted, at the start of her analysis, "that petitioner does not contest the merits of his successive postconviction petition or his pro se petition for rehearing." Rossi, 387 Ill. App. 3d at 1057. Rather, the

9

No. 1-08-3411

defendant sought a remand because counsel, appointed on what he titled "petition for rehearing," did not file a certificate or otherwise demonstrate compliance with Rule 651(c). Rossi, 387 Ill. App. 3d at 1057. The issue of first impression was whether Rule 651(c) applies to counsel appointed on the defendant's petition for rehearing when the "petition for rehearing *** contains a new allegation of unreasonable assistance on the part of original postconviction counsel." Rossi, 387 Ill. App. 3d at 1057.

In the course of her discussion of the application of Rule 651(c) in the context of the specific proceedings below, Justice McDade made clear that a challenge to the "reasonableness" of postconviction counsel's assistance is properly raised only when the presumption of compliance with Rule 651(c) is overcome. Where a certificate in accordance with Rule 651(c) is filed, "the presumption exists that petitioner received the representation Rule 651(c) requires a postconviction petitioner receive during second-stage proceedings." Rossi, 387 Ill. App. 3d at 1060; see also People v. Richardson, 382 Ill. App. 3d 248, 258, 888 N.E.2d 553 (2008) (postconviction counsel's "duty to amend under Rule 651(c) is limited by ' "the constitutional claims raised by the petitioner" [Citation]' "), quoting People v. Pendleton, 223 Ill. 2d 458, 475-76, 861 N.E.2d 999 (2006), quoting People v. Davis,

10

156 Ill. 2d 149, 164, 619 N.E.2d 750 (1993).

In the appeal before us, the defendant's contention against postconviction counsel's efforts is best illustrated by his argument that "post-conviction counsel failed to support petitioner's claim *** with admissible evidence that the path of the bullet showed Mr. Mendoza lacked an intent to kill." The defendant raises no specific claim that the certificate filed by postconviction counsel below is deficient in any manner. Nor does he claim that postconviction counsel failed to comply with any of the specific duties imposed by the rule. The analysis in Rossi makes clear, review of the reasonableness of counsel's effort is foreclosed if the presumption that Rule 651(c) was satisfied exists. Rossi, 387 Ill. App. 3d at 1060; see People v. Suarez, 224 Ill. 2d 37, 42, 862 N.E.2d 977 (2007) ("To ensure that postconviction petitioners receive [the] *** assistance [provided by the Act], Rule 651(c) imposes specific duties on postconviction counsel"); People v. Moore, 189 Ill. 2d 521, 543, 727 N.E.2d 348 (2000) ("[W]e hold that post-conviction counsel complied with the requirements of Rule 651(c) and thus rendered reasonable assistance"); Richardson, 382 Ill. App. 3d at 253 (claim rejected that postconviction "counsel's certificate is 'incomplete and therefore insufficient to create a presumption of compliance with Rule 651(c)' "); cf. People v. Bashaw, 361 Ill.

No. 1-08-3411

App. 3d 963, 970, 838 N.E.2d 972 (2005) (dismissal of postconviction petition reversed where certificate deficient and cause remanded for compliance with Rule 651(c)).

The adequacy of the defendant's initial contention turns on whether the defendant has made any showing that counsel failed to comply with any of the specific duties mandated by Rule 651(c).

> "Specifically, Rule 651(c) requires that the record disclose that post-conviction trial counsel: (1) consulted with the petitioner to ascertain his contentions of constitutional deprivation; (2) examined the record of the proceeding of the original trial; and (3) made any amendments to the pro se petition necessary to adequately present the petitioner's constitutional contentions." People v. Johnson, 154 Ill. 2d 227, 238, 609 N.E.2d 304 (1993).

A certificate pursuant to Rule 651(c) was filed in the proceedings below and present in the record before us. As we noted, the defendant does not contend the certificate is inadequate; nor do we find any deficiencies in the certificate. In the absence of a specific claim that postconviction counsel

12

No. 1-08-3411

violated any of the three duties mandated by Rule 651(c), we question whether the defendant's first contention is subject to review. The defendant's claim that his postconviction counsel provided "unreasonable, substandard, level of assistance" in amending his pro se postconviction petition appears barred by the presumption that the defendant "received the representation Rule 651(c) requires a postconviction petitioner receive during second-stage proceedings" when an unassailed certificate of compliance exists in the record. Rossi, 387 Ill. App. 3d at 1060; Richardson, 382 Ill. App. 3d at 257-58.

The cases the defendant cites to support his contention that postconviction counsel did not provide reasonable assistance do not stand for the proposition that a general challenge to the reasonableness of postconviction counsel's efforts is permitted on appeal from the dismissal of a postconviction petition outside the claim that at least one of the specific duties mandated by Rule 651(c) was violated. Of the six cases cited by the defendant as support that postconviction counsel rendered unreasonable assistance in this case, only two cases found a violation of Rule 651(c) and, in the context of a death penalty case, each addresses a specific violation of a Rule 651(c) duty. People v. Turner, 187 Ill. 2d 406, 719 N.E.2d 725 (1999); People v. Johnson, 154 Ill. 2d 227, 609 N.E.2d (1993).

13

The defendant in Turner expressly asserted claims that the duties outlined in Rule 651(c) were not satisfied. The supreme court rejected the defendant's claim that the first duty, "the consultation requirement in Rule 651(c)," had not been satisfied. Turner, 187 Ill. 2d at 411. The supreme court rejected the defendant's claim that postconviction counsel violated the second duty when he failed to examine the transcripts on specific dates because nothing of relevance to the petitioner's claims transpired. Turner, 187 Ill. 2d at 412. However, the supreme court found the last contention concerning the third duty to have merit: postconviction counsel failed "to make any amendments to the pro se post-conviction petition." Turner, 187 Ill. 2d at 412. Postconviction counsel had elected to stand on the pro se petition and, in doing so, failed to amend the petition to allege ineffective assistance of appellate counsel to avoid the bar of res judicata, which triggered the circuit court's dismissal. Turner, 187 Ill. 2d at 412-13.

The supreme court also faulted postconviction counsel for failing to allege that the defendant was prejudiced by trial counsel's assistance and for failing to attach any affidavits to support the claims in the postconviction petition based on evidence outside the record on direct appeal. Turner, 187 Ill. 2d at 413-14. The supreme court held that "post-conviction

14

counsel's performance was unreasonable and fell below the level of assistance required by Rule 651(c)."

In _Johnson_, the defendant conceded "that the first two requirements of Rule 651(c) were satisfied in this case." _Johnson_, 154 Ill. 2d at 238. The defendant contended, however, that postconviction counsel failed to "amend the _pro se_ petition in the manner necessary to adequately present the petitioner's claims." _Johnson_, 154 Ill. 2d at 238-39. While postconviction counsel filed an amended petition, the "amended petition realleged, _verbatim_, every allegation in the _pro se_ petition and added two additional claims," but no supporting affidavits or documents. (Emphasis in original.) _Johnson_, 154 Ill. 2d at 239. Postconviction counsel did, however, file his own affidavit detailing his efforts on behalf of the defendant. "Post-conviction counsel filed an affidavit as a supplemental record in this appeal, which unequivocally establishes that counsel made no effort to investigate the claims raised in the defendant's post-conviction petition or to obtain affidavits from any of the witnesses specifically identified in the defendant's _pro se_ petition." _Johnson_, 154 Ill. 2d at 241.

The court noted that postconviction counsel had a duty "to attempt to obtain affidavits from [witnesses identified by the defendant in his _pro se_ petition] for the purpose of shaping the

15

allegations in the post-conviction petition into appropriate legal form." Johnson, 154 Ill. 2d at 247. However, postconviction counsel had "no obligation to actively search for sources outside the record that might support general claims raised in [the] post-conviction petition." Johnson, 154 Ill. 2d at 247. Ultimately, the court ruled that the record failed "to show that post-conviction counsel amended the defendant's post-conviction petition in the manner necessary to adequately present the defendant's claims, as required by Rule 651(c)." Johnson, 154 Ill. 2d at 248. The court ordered a remand so that postconviction counsel "may comply, insofar as compliance is possible, with Rule 651(c)." Johnson, 154 Ill. 2d at 249.

The efforts by postconviction counsel here are in marked contrast to the efforts by postconviction counsel in both Turner and Johnson. Postconviction counsel filed an amended postconviction petition with supporting affidavits. The defendant does not contend that the petition fails in legal form or omits any of his pro se claims. See People v. Perkins, 229 Ill. 2d 34, 44, 890 N.E.2d 398 (2007) ("the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court"). One of the accompanying affidavits came from an expert witness that appeared on its face to support the defendant's pro se

16

theory of "falling-into-the bullet." Counsel also prepared affidavits of the defendant and his sister consistent with the allegations each had made to attack his conviction. That the affidavits of the defendant and his sister were unverified is of no moment when the unverified nature of the affidavits was not a basis for the circuit court's dismissal of the amended petition. See Johnson, 154 Ill. 2d at 245 ("While it is true that the trial court might have found grounds, other than the absence of supporting affidavits, to dismiss the defendant's claims, it is not apparent from the record that the trial court did dismiss the claims on such grounds" (emphasis in original)). The defendant makes no claim that the allegations in each of the unverified affidavits could be enhanced on remand. Rule 651(c) does not require that we remand this case for purposes of verification alone.

As we made clear, the defendant in the instant case makes no specific claim that postconviction counsel's assistance fell short of any of the duties outlined by Rule 651(c). Rather, the defendant faults postconviction counsel in the assistance she provided because the defendant's pro se claim regarding the path of the bullet is inadequately supported by the affidavits accompanying the petition. This claim amounts to no more than a general claim that postconviction counsel provided unreasonable

17

No. 1-08-3411

assistance, much as a defendant would attack the reasonableness of assistance provided by trial counsel. We agree with the State, the "petitioner's claim of unreasonable assistance of post-conviction counsel is not cognizable as a free-standing claim in post-conviction proceedings." Consequently, we reject the defendant's first contention as an improper challenge to the assistance provided by postconviction counsel in the absence of a meritorious claim that counsel did not comply with a specific duty outlined in Supreme Court Rule 651(c).

Even if we were to liberally construe this contention to claim a violation of the duty "to make any amendments to the pro se post-conviction petition" (Turner, 187 Ill. 2d at 412), the defendant fails to persuade us that a remand for compliance with Rule 651(c) is warranted. Rule 651(c) does not impose upon postconviction counsel a legal duty "to actively search for sources outside the record that might support general claims raised in a post-conviction petition." Johnson, 154 Ill. 2d at 247. If it is the defendant's claim that "admissible evidence" missing from his petition exists outside the record, there is no duty on postconviction counsel to discover that evidence. Johnson, 154 Ill. 2d at 247. On the other hand, if the defendant claims more factual support that he did not have the specific intent to kill exists in the record than presented in the amended

18

petition, we reject such a claim out of hand. The defendant fails to point to any such record evidence. In the absence of such a showing, we find no basis to conclude that postconviction counsel did not make "amendments to the petition[] filed pro se that [were] necessary for an adequate presentation of [the defendant's] contentions." 134 Ill. 2d R. 651(c). See People v. Moore, 189 Ill. 2d 521, 543, 727 N.E.2d 348 (2000) (the record shows "that post-conviction counsel complied with the requirements of Rule 651(c) and thus rendered reasonable assistance").

### Ineffective Assistance of Trial Counsel

In an 11 page, highly detailed discussion of the defendant's postconviction claims, the circuit court ruled the petition "failed to make a substantial showing that [the defendant's] constitutional rights were violated in *** the trial *** proceedings." On de novo review of the dismissal of the defendant's amended postconviction petition, we are unpersuaded that the circuit court's assessment of the record evidence is at odds with the original trial record.

A successful claim of ineffective assistance of counsel requires a showing of both deficient representation and prejudice. Strickland v. Washington, 466 U.S. 668, 694, 80 L.

No. 1-08-3411

Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); People v. Albanese, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984). A defendant is denied effective assistance of counsel when counsel's performance falls "below an objective standard of reasonableness and ***, but for this substandard performance, there is a reasonable probability that the outcome of the proceeding would have been different." People v. McPhee, 256 Ill. App. 3d 102, 106, 628 N.E.2d 523 (1993), citing Strickland, 466 U.S. at 687-94, 80 L. Ed. 2d at 693-98, 104 S. Ct. at 2064-68, and Albanese, 104 Ill. 2d at 525. To prove counsel's representation was deficient, the defendant must overcome a strong presumption that counsel's performance fell within the wide range of reasonable assistance. People v. Coleman, 183 Ill. 2d 366, 398, 701 N.E.2d 1063 (1998). In the context of a postconviction petition, the defendant must make a "substantial showing" that his right to effective assistance of counsel was violated to warrant relief. 725 ILCS 5/122-1 (West 2008).

There is no dispute that the defendant shot at Castruita four times. The defendant shot Castruita in the leg while the defendant was exiting the vehicle that brought him to Castruita's home. Had the defendant ended his assault then, his trial counsel might have had a good claim of reasonable doubt as to the defendant's intent to kill Castruita. But the defendant did not

20

end his assault with a single shot. Rather, the "[d]efendant ***
exited the vehicle and approached Castruita, aiming the weapon at
his chest, saying, 'Don't f--k with [my] family.' *** Castruita
threw his beer bottle at defendant, but defendant continued to
approach Castruita and fired three more shots from about three
feet away, striking Castruita in the chest and both legs."
People v. Mendoza, No. 1-03-0704, slip op. at 3 (2004)
(unpublished order under Supreme Court Rule 23).

Based on this evidence, there is little wonder that the jury
found the defendant guilty of attempted murder. It is an
understatement to note that trial counsel could do little to cast
doubt on the State's case. Nor does the defendant point to any
deficiencies in counsel's performance before the jury. Rather,
the crux of the defendant's claim centers on trial counsel's
decision to stipulate to the testimony of Dr. Zarat, Castruita's
treating physician at Mount Sinai Hospital, and the affidavit of
Dr. William Manion, which the defendant contends supports his
theory that Castruita fell into the bullet that struck his torso.

Regarding trial counsel's decision to stipulate, the
defendant fails to inform us of any benefit the defendant hoped
to gain through any cross-examination of Dr. Zarat. While the
defendant asserts "cross-examination of the victim's treating
physician [was necessary] to establish the crucial theory about

21

the path of the bullet -- that the injury to the victim's left kidney meant that the bullet entered the left lower chest - upper abdomen while the victim was 'falling into the bullet,' " he makes no showing that Dr. Zarat would have testified consistent with the defendant's "crucial theory" on cross-examination. The defendant concedes as much when he explains the need for an expert witness. "[I]t would have been better for trial counsel to have the medical expert witness prepared to testify because the treating physician might disagree with the expert's conclusions." We agree with the circuit court's finding, the defendant's claim that trial counsel was ineffective for stipulating to Dr. Zarat's testimony is conclusory. See People v. Coleman, 183 Ill. 2d 366, 381, 701 N.E.2d 1063 (1998) ("Nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act").

Recognizing the shortcomings of his claim that trial counsel's decision to stipulate to the medical evidence amounted to ineffective assistance, the defendant contends that evidentiary support for his "crucial theory" is provided by the affidavit of Dr. Manion. Dr. Manion averred:

> "Mr. Mendoza, based on my findings, was
> shooting downward when he fired at Mr.

22

No. 1-08-3411

> Castruita.  The path of the shots indicates that Mr. Mendoza was not aiming towards Mr. Castruita's head, shoulder or upper chest area.  It is my opinion that there is <u>no evidence that Mr. Mendoza was aiming at Mr. Castruita's chest or abdomen when he fired the shots</u>."  (Emphasis added.)

But the evidence before the jury is contrary to Dr. Manion's belief regarding the defendant's aim.  Castruita testified the defendant "was pointing [the gun] at my chest."  Castruita told the jury, the defendant "shot me in the chest."  The State asked James Jaramillo, "So when the defendant backed away and raised his arms what part of [Castruita's] body was the gun pointed at then?"  James Jaramillo testified, "His, you know, stomach."  Briana Augustyn testified that the defendant raised his arm with the gun in hand, "Maybe not a 90 degree angle, but it was pretty much head on."  She testified that when the defendant fired the gun, "It was pointed in the trunk of [Castruita's] body."  Finally, Hayde Canales demonstrated to the jury how the defendant held the gun pointed at Castruita.  The State described the demonstration, "Indicating for the record she's extended her right arm at almost a 90 degree angle from her shoulder."  The trial judge concurred, "So noted."

23

No. 1-08-3411

In its written decision, the circuit court rejected Dr. Manion's opinion, or that of any other expert witness with the same view of the medical records to challenge trial counsel's performance, as nothing more than second-guessing:

> "Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by Strickland and its progeny. See Strickland, 466 U.S. at 689[, 80 L. Ed. 2d at 695, 104 S. Ct. at 2065] ('[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight'); see also People v. Fuller, 205 Ill. 2d 308, 331, 793 N.E.2d 526 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions)."

We agree.

The assumption underlying Dr. Manion's expert opinion regarding the trajectory of the shots, upon which the defendant's claim of deficient performance by trial counsel is based, is

24

positively rebutted by the record.  See <u>People v. Rogers</u>, 197 Ill. 2d 216, 222, 756 N.E.2d 831 (2001) (Illinois courts have "consistently upheld the dismissal of a post-conviction petition when the record from the original trial proceedings contradicts the defendant's allegations").  We reject the defendant's contention that trial counsel's failure to call an expert, such as Dr. Manion, makes a substantial showing that counsel's performance fell below an objective standard of reasonableness. <u>Cf.</u> <u>People v. Popoca</u>, 245 Ill. App. 3d 948, 615 N.E.2d 778 (1993) (dismissal of postconviction petition reversed where trial counsel failed to consider how an expert witness would have assisted the defense of voluntary intoxication given that, when raised, "the State must show beyond reasonable doubt that the existence of the mental state for the offense was not negated by the defendant's intoxication").

Nor are we persuaded that the defendant suffered actual prejudice by trial counsel's failure to call Dr. Manion or another expert that might share his view of the medical records. There is little likelihood that the jury verdict would have differed had a medical expert such as Dr. Manion testified to support the defendant's lack of intent claim.  It is reasonable to infer that had such expert testimony been available to the defendant at trial, the State would have proffered an expert of

25

No. 1-08-3411

its own, holding the view that the eyewitnesses' testimony that the defendant fired at the torso of Castruita was consistent with the injuries Castruita suffered, a point that appears not to have escaped the defendant when he acknowledges that "the treating physician might disagree with the expert's conclusions." See Popoca, 245 Ill. App. 3d at 958-59 ("The circuit court mentioned that if defense counsel had called an expert the State would have called one as well").

The question before the jury even with such expert testimony would have remained the same. As trial counsel argued, "Ladies and Gentlemen of the jury, one question did [the defendant] intend to kill him? Did he mean to kill him?" The intent of the defendant at the time he fired the shots was exclusively within the province of the jury. No amount of expert testimony based solely on medical records, which may be subject to different interpretations, would have undermined the testimony of the four prosecution witnesses, including the victim, that the defendant fired the gun consistent with the internal injuries Castruita suffered.

Appellate counsel's suggestion that it "would have been better" had live testimony been heard by the jury regarding the trajectory of the shots is nothing more than hindsight. We decline to view trial counsel's performance through the distorted

26

lens of hindsight. See <u>Strickland</u>, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction *** and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable").

Under the facts of this case, the defendant is unable to overcome the strong presumption that trial counsel's performance was the product of reasonable trial strategy, not incompetence. See <u>Coleman</u>, 183 Ill. 2d at 398. Accordingly, the defendant is unable to satisfy the first prong of <u>Strickland</u>. That trial counsel undertook an unsuccessful strategy or that another attorney would have handled the defense differently adds little to the claim that trial counsel rendered constitutionally deficient assistance. See <u>People v. Palmer</u>, 162 Ill. 2d 465, 476, 643 N.E.2d 797 (1994)("counsel's strategic choices are virtually unchallengeable").

Even assuming, <u>arguendo</u>, that counsel's performance was objectively substandard, the defendant cannot show he was prejudiced because we find no basis to call into question the jury's verdict that the defendant was guilty of attempted murder when he fired four shots at Castruita. See <u>People v. Tabb</u>, 374 Ill. App. 3d 680, 694, 870 N.E.2d 914 (2007) ("The fact that

No. 1-08-3411

defendant fired his gun three times at the victim alone supports the jury's finding of an intent to kill under [People v. Mitchell, 209 Ill. App. 3d 562, 569, 568 N.E.2d 292 (1991)]").

The circuit court properly dismissed, without an evidentiary hearing, the defendant's amended postconviction petition, which included his claim of ineffective assistance of trial counsel.

CONCLUSION

In the absence of a claim that a specific duty under Rule 651(c) was violated by postconviction counsel, the defendant's claim asserting unreasonable assistance is foreclosed by the certificate postconviction counsel filed pursuant to Supreme Court Rule 651(c). Even if a liberal reading of the defendant's claim on appeal supports such a contention, no showing has been made that postconviction counsel violated any of the duties mandated by the rule. In his amended petition, the defendant did not make a substantial showing of ineffective assistance of trial counsel, thus justifying the dismissal of the petition by the circuit court.

Affirmed.

HALL, P.J., and LAMPKIN, J., concur.

28

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

**PEOPLE OF THE STATE OF ILLINOIS**
      **Plaintiff-Appellee,**

**v.**

  **JIMMIE MENDOZA,**
      **Defendant-Appellant.**

**No. 1-08-3411**

**Appellate Court of Illinois**
**First District, First Division**

**Filed: June 7, 2010**

**JUSTICE GARCIA delivered the opinion of the court.**

**HALL, P. J., and LAMPKIN, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Joseph M. Claps, Judge Presiding**

| For PLAINTIFF-APPELLEE | Anita Alvarez, State's Attorney, County of Cook |
| | Alan J. Spellberg |

**Sally L. Dilgart**
**Assistant State's Attorneys**
**Richard J. Daley Center, Room 309**
**Chicago, IL 60602**

**For DEFENDANT-**
**APPELLANT**

**Michael J. Pelletier, State Appellate Defender**
**Charles M. Schiedel, Deputy Defender**
**Kim Robert Fawcett**
**Assistant Appellate Defender**
**Office of the State Appellate Defender**
**Supreme Court Unit**
**20 N. Clark Street, 28th Floor**
**Chicago, IL 60602**

No. 1-08-3411